## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Honorable Cathy L. Waldor |
| v. | : | Mag. No. 12-7234 |
| MAXWELL POKU | : | **CRIMINAL COMPLAINT** |

I, James Morrissey, being duly sworn, state the following is true and correct to the best of my knowledge and belief. From in or about June 2012 through in or about August 2012, in Essex County, in the District of New Jersey, and elsewhere, defendant MAXWELL POKU did:

> encourage, or induce an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law, and did so for the purpose of commercial advantage or private financial gain,

in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iv) and (B)(I).

I further state that I am a Special Agent with U.S. Immigrations & Customs Enforcement, and that this complaint is based on the following facts:

SEE ATTACHMENT A

continued on the attached page and made a part hereof.

_____
James Morrissey, Special Agent
U.S. Immigration & Customs Enforcement

Sworn to before me and subscribed in my presence,
August 9, 2012, at Newark, New Jersey

_____
Signature of Judicial Officer

HONORABLE CATHY L. WALDOR
UNITED STATES MAGISTRATE JUDGE

ATTACHMENT A

I, James Morrissey, a Special Agent with the U.S. Immigration & Customs Enforcement ("ICE"), having conducted an investigation and having spoken with other individuals, have knowledge of the following facts:

1. On May 11, 2012, MAXWELL POKU advised an individual ("CI-1"), whom he knew to be residing in the United States illegally, or in reckless disregard of that fact, to obtain documents in support of an I-751 Petition to Remove Conditions on Residence ("Petition"). MAXWELL POKU advised the individual to obtain documents from document preparers in support of CI-1's I-751 Petition, and provided CI-1 with a list of documents that he advised CI-1 to obtain in support of his Petition. CI-1 advised MAXWELL POKU during that meeting that CI-1 had not been married when he had previously sought Conditional Residence status ("CR6" status) in reliance upon his purported marriage to S-1.

2. On June 1, 2012, MAXWELL POKU inquired whether CI-1 had been able to obtain a marriage certificate. CI-1 told MAXWELL POKU that, as CI-1 had told MAXWELL POKU in their prior meeting, CI-1 did not have such a certificate. MAXWELL POKU requested information from CI-1 regarding the woman to whom CI-1 had previously falsely represented he was married, S-1. For example, MAXWELL POKU requested that CI-1 provide MAXWELL POKU with S-1's date of birth, and that CI-1 obtain a copy of her birth certificate. CI-1 said that he would try to obtain S-1's birth certificate by passing by her house. In other words, CI-1 conveyed that he did not share a residence with S-1, although the documents needed to support CI-1's Petition would need to reflect CI-1's shared residence with S-1, given their purported continued marriage status.

3. CI-1 obtained the documents needed in support of his Petition from two other individuals, and paid them for the documents. Those documents included fraudulent tax returns, a "Green Card," a Pennsylvania driver's license, a social security card, and various utility bills. CI-1 then presented the fake documents to MAXWELL POKU, to whom CI-1 paid a $2,000 down payment for handling CI-1's filing.

4. MAXWELL POKU acknowledged to CI-1 that the documents CI-1 had obtained were fake, but told CI-1 that he would file them in a way that the fraud would remain undetected.

5. MAXWELL POKU helped CI-1 to obtain fraudulent documents, knowing that the documents would be used by the CI-1 for immigration purposes, and knowing that CI-1's residence in the United States was illegal, or in reckless disregard of that fact.